IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
99 MAR -5 PM 2:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

ERNEST EDWARD SCHEINERT, JR, )
)
    Plaintiff, )
)
vs. ) Case No. CV-97-TMP-2099-S
)
SOUTHERN RUBBER COMPANY, INC., )
)
    Defendant. )

ENTERED
MAR 5 - 1999

MEMORANDUM OPINION

    This cause is before the court on the motion for summary judgment filed by the defendant on August 31, 1998, which has been briefed and argued by the parties.[1]

Summary Judgment Standard

    Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking

---

[1] On November 4, 1998, the parties filed a joint consent to the exercise of final jurisdiction by the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).



summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, she may not merely rest

on her pleadings. <u>Celotex</u>, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Id</u>. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id</u>. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Id</u>. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Id</u>. at 251-52; <u>see also</u> <u>Bill</u>

Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. Anderson, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

Facts

Using these standards, the following facts appear either to be undisputed or, if disputed, taken in a light most favorable to the plaintiff. Defendant is a Birmingham-based company engaged in the business of wholesaling and retailing light truck, passenger, and commercial fleet truck tires. One of defendant's divisions is the Truck Tire Center, which sells new and recapped tires for large, commercial fleet trucks. In 1991, plaintiff was hired by defendant for the position of manager of the Truck Tire Center. As manager, he was responsible for inventory control, sales, personnel hiring, discipline, and training, and all financial aspects of the Truck Tire Center. He reported directly to John Abernethy, the president of Southern Rubber Company. Richard Abernethy, John's brother, was the Chief Executive Officer of the defendant.

Beginning in early 1996, John Abernethy began receiving reports from employees at the Truck Tire Center that the Center was not being run properly, that inventory was being taken out without being billed to a customer, and that "too much drinking" was going on. Employees raised questioned about plaintiff's health and the possibility that he was coming to work under the influence of alcohol. Judy Caufield, defendant's Credit Manager, reported to Richard Abernethy that she had received telephone calls after hours

5

at home from plaintiff in which he sounded intoxicated. Abernethy himself had smelled alcohol on plaintiff's breath one morning, causing him to be concerned about plaintiff's health and to ask him whether he was alright. Employees reported that the Center was in bad shape and plaintiff, as manager, had lost the respect of the Center's employees.

On July 1, 1996, John Abernethy called plaintiff into his office and confronted him with the belief that plaintiff had a "drinking problem." He insisted that plaintiff take thirty days paid leave and check into an alcohol rehabilitation program. Plaintiff did not protest or object to the assertion that he had a "drinking problem," and he and Abernethy then scanned through a telephone book to select several possible programs for him to contact. The next day, plaintiff contacted a doctor, who assessed him and referred him to the Baptist Hospital Montclair night out-patient substance abuse counseling program. Although the program was designed for six weeks of counseling, plaintiff was dismissed after three weeks on the conclusion of his doctor that he was not alcohol dependent. Plaintiff denies that he is an alcoholic or is alcohol dependent. Defendant paid the costs associated with plaintiff's treatment and counseling.

During July, while plaintiff was on leave, John Abernethy

6

ordered Judy Caulfield and Chief Financial Officer Brad Gray to conduct an audit of the finances and inventory of the Truck Tire Center. The audit revealed that, in his position as manager, plaintiff had used "hold tickets" to sell tires on credit to customers who had already exceeded their credit limits and whose accounts had been "locked" by the Credit Department. Hold tickets were hand-written sales tickets that were held by plaintiff for a period of time until the customer had made sufficient payments on its account for it to be "unlocked" by the Credit Department. At that point, plaintiff would then process the hold ticket through the company's computer sales-tracking system. Plaintiff admits that this violated company policy, but asserts that other managers did it as well and that it was necessary to preserve the accounts of several large customers.

The audit also revealed that plaintiff had violated company policy by providing a truck painting service at the Truck Tire Center. Not only had plaintiff been instructed not to paint trucks because there had been complaints about the poor quality of earlier paint jobs, he also had documented the charges for the paint jobs as if they were tire sales, thereby inflating the Truck Tire Center gross sales figures upon which his commissions were calculated.

Drinking and alcohol on Southern Rubber Company premises and

7

at company functions were a long-standing tradition. Frequently, company management, including John Abernethy, would bring beer and liquor to the Truck Tire Center for parties on holidays and at other times, such as during after-hours inventories. In February 1996, the company tightened its alcohol policy, prohibiting alcohol and controlled substances on all Southern Rubber Company premises. Nonetheless, John Abernethy again brought beer to the Truck Tire Center on at least one occasion after the new policy went into effect. Neither Abernethy ever witnessed plaintiff intoxicated or drinking to excess while at work or on defendant's property.

On August 6, 1996, plaintiff again met with John Abernethy to report that he had completed the alcohol counseling and was ready to return to work. Abernethy informed him that he would not be allowed to return to work. He stated that plaintiff was being terminated due to his "lifestyle." No other reason for the action was stated and, indeed, in the plaintiff's personnel file, no reason for the termination was stated. When plaintiff applied for unemployment compensation, defendant did not object and did not assert that plaintiff had been terminated for misconduct. Within four or five weeks, plaintiff found new employment as a maintenance supervisor.

The day following his termination, August 7, 1996, plaintiff

8

filed a charge of disability discrimination with the Equal Employment Opportunity Commission. Ultimately a right-to-sue letter was issued on June 9, 1997, and plaintiff filed this action on August 12, 1997. Experiencing financial troubles, plaintiff and his wife filed for Chapter 7 bankruptcy protection on April 9, 1998. Although the bankruptcy action was filed almost eight months after this one, plaintiff did not list his claims in this lawsuit as a potential asset until July 15, 1998, when he sought to amend the bankruptcy petition to add it as an asset. That motion to amend was granted two days later on July 17, 1998.

### Claims and Arguments

Plaintiff has asserted four claims for relief: (1) that his termination was a violation of the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.*; (2) that his termination was in retaliation for his having exercised his leave rights under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*; (3) that remarks made by the defendant indicating that plaintiff was fired because he was an alcoholic were defamatory under Alabama state tort law; and (4) that remarks made the defendant that plaintiff had been fired because he was an alcoholic were an invasion of his

privacy under Alabama state tort law. In addition to denying the merits of each of plaintiff's claims, defendant argues that he is judicially estopped from prosecuting these claims because he failed initially to report them as assets in his bankruptcy petition. Defendant also contends plaintiff lacks standing to prosecute this action because it became the property of the bankruptcy estate under the control of the trustee once plaintiff filed Chapter 7 bankruptcy.

### Discussion

A.  Judicial Estoppel and Standing

Defendant Southern Rubber advances the twin assertions that plaintiff lacks standing to prosecute this action because it is now an asset of the bankruptcy estate under the control of the trustee, not plaintiff, and that plaintiff is judicially estopped in this action because he initially failed to list it as an asset in the bankruptcy petition. It is now clear, however, that the trustee has authorized plaintiff's counsel to continue prosecution of this action, alleviating any concerns of a conflict between the interests of the estate and this action. In effect, the trustee has delegated to plaintiff the right and duty to go forward. Plaintiff thus has sufficient standing.

10

The court also is unpersuaded that judicial estoppel bars this action. While it is true that plaintiff initially did not list this action as an asset of the estate, he amended his petition within two months' of its filing to correct what was an apparent oversight. There is no evidence suggesting the plaintiff deliberately omitted the listing of this action in an attempt to defraud the bankruptcy court or his creditors. Certainly, the omission caused no prejudice to this defendant. Barring prosecution of this action on the equitable notion of judicial estoppel would not be an equitable outcome for it would amount to an undue windfall for defendant while punishing innocent creditors by depriving them of a potential asset in the estate. To the extent there is any merit in the claims pressed here (and as will be explained below, there is none), creditors of the estate have the right, through the trustee, to seek to collect on them. The court will not grant summary judgment on the basis of judicial estoppel.

B.  Disability Discrimination

The court is persuaded that plaintiff's first claim for relief, grounded on the Americans with Disabilities Act, ("ADA") 42 U.S.C. 12101 *et seq.*, is meritless and due to be dismissed.

11

Plaintiff's theory contends that, although not an alcoholic, he was "perceived" to be one and, therefore, was terminated because defendant "regarded [him] as having such an impairment." See 42 U.S.C. § 12102(2a)(C).

It is a violation of the ADA not only to discriminate against a qualified individual who is in fact disabled, but also as to one with a record of a disability or who is "regarded" as suffering from a disabling impairment. The term "disability" is defined by the Act to include individuals "being regarded as having [a physical or mental impairment that substantially limits one or more of the major life activities of such individual]." 42 U.S.C. § 12102(2)(C). Claims of discrimination based on this standard have been called "perceived disability" discrimination claims. See, e.g., Witter v. Delta Airlines, Inc., 138 F.3d 1366, 1369 (11th Cir. 1998); Duda v. Board of Education of Franklin Park Public School District No. 84, 1997 U.S. Dist. LEXIS 7097 (N.D. Ill, 1997). Like actual disabilities, to qualify for protection under the Act, the "perceived" disability must be regarded by the employer as one that "substantially limits one or more of the major life activities" of the employee. It is not enough that the employer merely perceives the employee to have an impairment; the employer must perceive, correctly or incorrectly, that the impairment substantially limits

12

the employee in one or more of his major life activities. Because plaintiff does not contend that defendant regarded his "drinking problem" as an impairment that substantially limited his ability to care for himself, or to eat, breathe, or walk, he must contend that defendant regarded the impairment as substantially limiting his ability to work.

It is not enough, however, to show that the employer may have regarded the impairment as limiting the employees ability to perform a specific job or a narrow class of jobs. Rather, to meet the definition of disability found in the Act, the "perceived" impairment must be regarded by the employer as restricting the employee's ability to perform a broad range of jobs. As the Eleventh Circuit has explained:

> Therefore, to establish that he has a "disability" under the "regarded as" prong of § 12102(2), [the employee] must produce evidence showing that [the employer] regarded him as being significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes.

Witter v. Delta Airlines, Inc., 138 F.3d 1366, 1370 (11th Cir. 1998); see also Pritchard v. Southern Company Services, 92 F.3d 1130, 1133 (11th Cir. 1996). In Witter, the court of appeals rejected that plaintiff's claim under the "perceived disability" standard, even though he was regarded as being unable to perform

his job as an airline pilot, because he was not regarded by his employer as being unable to perform other jobs requiring the same level of education, training, and skill. Thus, loss of the ability to perform a *particular* job, does not mean that the impairment substantially limits a persons ability to work.

Even under the plaintiff's version of the facts in this case, that he was terminated because he was wrongly perceived as having a "drinking problem," there is no evidence that Southern Rubber Company regard his "drinking problem" as an impairment that substantially limited his ability to perform a broad class of jobs. There is no evidence that Abernethy or any one else believed that plaintiff was unable, due to his "drinking problem," to perform satisfactory work in a broad class of jobs available in the Birmingham market for persons with training, education, and experience similar to plaintiff's. It is not enough to show merely that defendant questioned whether plaintiff could continue to manage the Truck Tire Center, as that proves nothing more than that his "drinking problem" was regarded as limiting his ability to do a *specific or particular* job. Nor does the fact that John Abernethy required plaintiff to go to an alcohol rehabilitation program prove that he was regarded as unable to perform work in a

14

broad class of jobs. Abernethy's undisputed testimony was that he was concerned about plaintiff's health, not his ability to work.

In sum, there is no evidence that plaintiff was suffering from an *actual* impairment (indeed, the evidence supports his denial of alcoholism) at the time of his discharge, nor is there evidence that defendant believed plaintiff's "drinking problem" to be an impairment that substantially limited his ability to perform managerial work in the Birmingham market. Absent some proof on either of these theories, the sole fact that defendant regarded plaintiff as having a "drinking problem" does not prove that he had a disability within the protections of the ADA. Because plaintiff cannot establish, therefore, that he was "a qualified individual with a disability" as defined by the Act, his claim under the ADA must fail and be dismissed.

Although not clear, plaintiff's complaint also refers to the Rehabilitation Act as a basis for relief. The standards for assessing a claim of discrimination under the Rehabilitation Act are the same as those provided by the Americans With Disabilities Act. The Rehabilitation Act itself expressly states that "the standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under Title I of the

15

Americans With Disabilities Act of 1990 (42 U.S.C. § 12111, et seq.)." See 29 U.S.C. § 794(d); Holbrook v. City of Alpharetta, Georgia, 112 F.3d 1522, 1526 (11th Cir. 1997). To assert a claim, therefore, the plaintiff must prove "(1) he has a disability; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination because of his disability." Holbrook v. City of Alpharetta, Georgia, supra. Because the court already has determined that plaintiff cannot show that he had a "disability" under the ADA, it follows that he does not have one under the Rehabilitation Act as well. Thus, to the extent plaintiff intended to plead a claim for relief under the Rehabilitation Act, it too is meritless and due to be dismissed.

C.  Family and Medical Leave Act Claim

In Count II of his amended complaint, plaintiff alleges a claim for retaliatory dismissal under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611 et seq., asserting that he was terminated because he utilized his right to leave under the Act to participate in substance-abuse counseling during July 1996. In general terms the FMLA provides employees with the right to take up to twelve weeks of *unpaid* leave to deal with their own serious

medical problems, those of family members, or for the birth or adoption of a child. Employees have the right under the Act to be returned to the same or a similar job position upon their return from leave, and they may not be subjected to adverse job actions because they have utilized the leave provided by the Act.

To establish a *prima facie* case for the violation of the FMLA, the plaintiff must show three things: (1) that he availed himself of a right protected by the FMLA; (2) that he thereafter suffered an adverse employment decision; and (3) that there was a causal connection between the exercise of the right under the FMLA and the adverse employment decision. Dollar v. Shoney's, Inc., 981 F.Supp. 1417, 1420 (N.D. Ala. 1997)(citing Morgan v. Hilti, 108 F.3d 1319, 1325 (10th Cir. 1997)); Gay v. Gilman Paper Co., 125 F.3d 1432, 1434 (11th Cir. 1997). Once a *prima facie* case of discrimination under the FMLA is established, the burden of articulating a legitimate, non-discriminatory reason for the contested employment action shifts to the employer. If such a reason is articulated by the defendant, the burden then rests on the plaintiff to show by a preponderance of the evidence that the articulated reason is a pretext for unlawful discrimination.

Plaintiff's claim fails on the very first element: there is no

17

evidence that plaintiff ever availed himself of leave under the Act. It is true, of course, that he was compelled to take thirty days paid leave by his employer in order to check into an alcohol rehabilitation program. There is absolutely no evidence that either plaintiff or defendant regarded this paid leave as FMLA leave. Plaintiff never notified defendant that he wanted to convert the paid leave to *unpaid* FMLA leave, or that the leave be counted against his accrued sick leave and vacation. This was not leave that plaintiff sought, but leave forced upon him by the defendant. It simply cannot be said that plaintiff availed himself of FMLA leave.

Additionally, there is no evidentiary basis at all for believing that plaintiff's job was terminated *because* he took the leave. First, he did not want to take it, but was forced to by his employer. Further, when he contacted Abernethy about returning to work before thirty days elapsed, he was told to call back when the full thirty days was up. The uncontradicted evidence is that the leave was defendant's idea and was taken at defendant's insistence, not plaintiff's. It is illogical to conclude that the taking of the leave was what motivated defendant to terminate plaintiff's employment when the leave was at defendant's insistence.

18

Under these circumstances, it cannot be said that plaintiff availed himself of a right provided by the Act, or that utilization of the Act caused his dismissal. Thus, plaintiff cannot prove either the first or third elements of a cause of action for retaliation under the Act, and his claim under the FMLA is due to be dismissed.

D. <u>State Tort Claims</u>

Plaintiff's state tort claims for defamation and invasion of privacy are before the court based on supplemental jurisdiction under 28 U.S.C. § 1367. Section 1367(c) provides that the district court may decline to exercise supplemental jurisdiction over state claims if "the district court has dismissed all claims over which it has original jurisdiction." In the instant case, given the dismissal of plaintiff's ADA, Rehabilitation Act, and FMLA claims, it is appropriate for the court to dismiss without prejudice his state tort claims to allow those claims to be considered by the state courts. Federalism and comity suggest that state law claims are best left to state courts for development and vindication. The state tort claims will be dismissed without prejudice.

19

### Conclusion

By separate order, the court will grant summary judgment as to and dismiss with prejudice all of plaintiff's federal claims, and dismiss without prejudice his state tort claims.

DATED this  5th  day of March, 1999.

T. MICHAEL PUTNAM
CHIEF MAGISTRATE JUDGE